MARY A. BROOKS et al., Appellants, v. GAFFIN.

Division One, December 21, 1905.

1. ACTION AT LAW: When Converted by Answer Into Suit in Equity. The pleading of a mere equitable defense does not convert an action at law into one in equity. To do that the answer must contain a cross-bill and ask for affirmative relief.

2. CONTRACTS: Parol Modification by Deceased Party. Loose statements attributing to a deceased party a consent to a modification of the terms of a written contract, are viewed with extreme caution by the courts.

3. ————: Forfeiture: Honest Mistake. In a suit to forfeit a contract there is no room for the defense of honest mistake if the terms of the contract are such that defendant was required to know the things about which he claims he was honestly mistaken, and to begin such work at once on the execution of the contract as would have made known to him the very things concerning which he claims he was honestly mistaken.

4. ————: ————: ————: Mining Lease. Where the terms of the lease required the defendant to enter at once upon the leased premises and to so remove coal therefrom that the face of the coal thereon should be kept even with the face of the coal on his own premises, he cannot defend his failure to keep the face

of the coal even by a showing that, guided by an erroneous survey, he honestly believed he was not on the leased premises. He was guilty of a breach of the conditions of the lease when he failed to enter upon the leased premises and to so mine the same.

5. ———: ———: ———: Survey: Procured by Party Relying On It. An erroneous survey, erroneous because the lessee of the mine told the surveyor at what point to start, which was not the true line between his own and the lessor's premises, cannot be held to be an honest mistake by the lessee when a suit is brought by the lessor to forfeit the lease.

6. ———: ———: Ejectment: Right of Re-entry Reserved. Where the contract contains a provision for forfeiture for a breach of an essential condition thereof, ejectment will lie for possession of the premises. The right of re-entry need not be expressly reserved, but such a right is a necessary incident of the condition, and if the condition is broken the right of possession immediately arises.

7. ———: ———: Mining Lease: Even Face: Reasonable Condition. A provision in a mining lease requiring the face of the coal to be kept even, the purpose being to prevent mining in pockets and only in places where the coal was best, is not unreasonable, and a known substantial breach thereof is sufficient to base a forfeiture upon.

Appeal from Lafayette Circuit Court.—*Hon. Samuel Davis,* Judge.

REVERSED AND REMANDED (*with directions*).

*Alexander Graves* and *Wm. H. Chiles* for appellants.

(1) The answer converted this into an equitable proceeding for appellate purposes. Leavitt v. Taylor, 163 Mo. 170; Cox v. Sloan, 158 Mo. 429; Dunn v. McCoy, 150 Mo. 561. (2) Equity can not afford relief against the express clauses of forfeiture of the lease unless the lessor or plaintiffs were culpable. Ruddick v. Railroad, 116 Mo. 34; Village of Morgan Park v. Graham, 136 Ill. 524; Brink v. Steadman, 70 Ill. 243; Faylor v. Brice, 7 Ind. App. 553; Woodward v. Mitchell, 140 Ind. 411. Forfeiture clauses must be reasonably

construed. Their enforcement is as much obligatory according to the intent of the parties as any other part of the contract. Shoenburger v. Hay, 40 Pa. 132; Lynde v. Hough, 27 Barb. 420; Doe v. Elsam, 1 M. & M. 191; Taylor on Eject. and Adv. Enj., p. 282. (3) Equity can never relieve against a forfeiture for breach of a condition to perform a collateral act, the party claiming the forfeiture not being culpable. 2 Wash. on Real Property (6 Ed.), secs. 963, 964; 2 Story's Eq. Jur. (12 Ed.), sec. 1321; Gregor v. Wilson, 9 Hare 689; Croft v. Goldsmid, 24 Bev. 312; Hills v. Rowland, 4 De G. M. & G. 430; Rolfe v. Harris, 2 Price 206; Doe v. Ashby, 10 A. & E. 71; Drewry on Injunction, p. 81. (4) Besides the failure to perform the six collateral acts covenanted for in the lease, his willful refusal to pay royalty for February, March, April, May and June, 1901, or tender the same, is such that equity cannot afford relief. 2 Wash. on Real Property (6 Ed.), sec. 964. As to his duty to tender same see: Harris v. Mulock, 9 How. Pr. 406; Judd v. Ensign, 4 Barb. 256; Eastman v. Tp. Dist., 21 Iowa 590. And he must tender a sufficient amount at his peril. Helphry v. Railroad, 29 Iowa 480. (5) The pretended verbal contract releasing the obligation to make survey of the mines twice a year and exhibit same, to show how the face of coal progressed on the leased land, constitutes no defense, it not being based upon any consideration according to all the evidence. Wilson & Aull v. Railroad, 66 Mo. App. 394.

*John Welborn, Chas. Lyons* and *U. G. Phetzing* for respondent.

(1) Courts of equity never lend their aid to the enforcement of forfeitures. Sease v. Stove & Hollowware Foundry, 141 Mo. 496; Messersmith v. Messersmith, 22 Mo. 369; Towne v. Bowers, 81 Mo. 497; Gratz v. Railroad, 165 Mo. 217; Heman v. Wade, 140 Mo. 346; Lasar v. Baldridge, 32 Mo. App. 362; Hayden

v. Lauffenburger, 157 Mo. 95; Wheless v. St. Louis, 90 Mo. App. 106; Palmer v. Ford, 70 Ill. 369; Ins. Co. v. Tomlinson, 125 Ind. 84; Ins. Co. v. Hardesty, 182 Ill. 39. (2) Equity will grant relief in cases of accident and mistake. Story, Eq. Jur., sec. 1323; Lundin v. Schoeffel, 167 Mass. 465; Hayden v. Lauffenburger, 157 Mo. 95; Williams v. Carroll Co., 167 Mo. 9; Hulett v. Fairbanks, 40 Ohio 233; Holdworth v. Shannon, 113 Mo. 522; Stephenson v. Kirkpatrick, 166 Mo. 269; Atkins v. Chilson, 11 Metc. 112; Bruce v. Nelson, 35 Iowa 157; Kopper v. Dyer, 59 Vt. 477. (3) Where there has been a breach of a covenant to pay rent equity will relieve against a forfeiture although the breach is willful on the part of the lessee; and where there has been a breach of a covenant to perform some collateral duty which has been caused by accident or mistake, equity will relieve if the lessee can, by compensation or otherwise, be placed in the same condition as if the breach had not occurred. Lundin v. Schoeffel, 167 Mass. 465; Giles v. Austin, 62 N. Y. 486; Noyes v. Anderson, 124 N. Y. 175; Andrews v. Sullivan, 7 Ill. 327; Blair v. Chamblin, 39 Ill. 521; Mactier v. Osborn, 146 Mass. 399; Knight v. Orchard, 92 Mo. App. 466. (4) There was never any demand made on respondent for the rent or royalty, and there can be no forfeiture until demand is made. Cone v. Woodward, 65 Ill. 477; Cheny v. Bonnell, 58 Ill. 268; Dodge v. Wright, 48 Ill. 382. And where no place is named for payment, demand must be made at the most public or notorious place on the premises before the courts will declare a forfeiture. Smith v. Whitbeck, 13 Ohio St. 471; Rea v. Transfer Co., 88 Am. St. 809; Land Co. v. Manning, 98 Mo. App. 261; Boyd v. Talbert, 12 Ohio 212; Gage v. Bates, 40 Cal. 384; O'Connor v. Kelley, 41 Cal. 432; Chapman v. Harney, 100 Mass. 353; Willard v. Benton, 57 Vt. 285. The evidence shows that the royalty was ready to be paid to plaintiffs on demand. (5) Defendant has made valuable improvements, amounting to several thousands of

dollars. Ins. Co. v. Rector, 12 Abb. N. C. 50. (6) Alex.
Brooks, the original lessor, by his agreement made subsequently to the written contract waived his right to
insist on two surveys each year. Land Co. v. Ross, 135
Mo. 111; Moore v. City of Jefferson, 45 Mo. 205; Briggs
v. Laundry, 171 Mo. 290; St. Louis v. Gaslight Co., 70
Mo. 116; Marks v. Bank, 80 Mo. 316; Lancaster v. Elliott, 55 Mo. App. 254; Mason v. Gass, 62 Mo. App. 452;
Thomas v. Barnes, 156 Mass. 581; Brown v. Everhard,
52 Wis. 205; Palmer v. Sanders, 49 Fed. 144; Cheshire
v. Taylor, 29 Iowa 492; Viele v. Ins. Co., 26 Iowa 9.
(7) In all suits in equity where the witnesses testify
orally, the appellate court defers somewhat to the finding of the trial court. Taliaferro v. Evans, 160 Mo. 380;
Dunivan v. Dunivan, 157 Mo. 157; Dameron v. Jamison,
143 Mo. 483; Chapman v. McIlwrath, 77 Mo. 43; Choteau v. Allen, 70 Mo. 358; Taylor v. Crockett, 123 Mo.
306.

MARSHALL, J.—This is a suit in ejectment to
recover possession of certain lands lying in section 1,
township 50, range 27, and in section 36, township 51,
range 27, in Lafayette county. Judgment was rendered
for defendant in the trial court and the plaintiffs appealed.

### THE ISSUES.

The petition alleges that the plaintiffs are the
widow and children of Alexander Brooks, who died in
February, 1901; that on the 1st of February, 1899, Alexander Brooks entered into a written coal lease, with the
defendant, of the premises in controversy, whereby he
leased to defendant the premises for a term of twentyfive years unless sooner terminated or forfeited by the
terms and provisions of the lease; that the lease conferred upon the defendant no right to use the surface of
the land except for the maintenance of one airshaft for
ventilating the mine; that all coal mined from the prem-

ises should be removed through the slope and entry of the defendant on the land adjoining the premises leased; that the defendant by the terms of the lease agreed in good faith and with all proper expedition, to mine and remove coal from said premises, "agreeing for the first two years of this lease to mine and remove sufficient coal at least to keep the face of the mine of the above premises even with the face of the coal of said second party on the adjoining land now being mined by him, and that during the remaining years of said lease he will mine and remove at least 16,000 bushels per month from September 1st of each year to April 1st of the following year, and at least one-fourth of that amount during the other months of the year, and in default of mining such quantities, will pay for at least that number of bushels at each monthly pay day whether mined or not and whether in whole or in part. Said second party agrees to pay for such coal at the rate or royalty of one-eighth of a cent per bushel, provided that if the amount mined in any one year shall be as much as 300,-000 bushels then he will only pay one-tenth of a cent per bushel. . . Said second party agrees and binds himself to make a settlement on the 20th of each month of all coal mined to the first day of such month and unpaid for, and to make payment of the amount found to be due on said day and to ascertain the amount of coal so mined; agrees to correctly weigh all coal so mined and keep a full and correct account thereof  .  .  . Should said second party (Otho M. Gaffin) fail to mine the minimum amount of coal to be mined thereunder for four consecutive months, the first party has the right to terminate this lease on written notice to that effect given said second party or his heirs or legal representatives  .  .  . On the non-performance or non-compliance with any of the terms and conditions of this agreement on the part of the second party (Otho M. Gaffin) this lease shall be forfeited at the option of the party of the first part, who shall be entitled to re-enter

and take possession of the premises on ten days' written notice to that effect to said second party, his heirs or legal representatives. The second party (Otho M. Gaffin) for himself, assigns and legal representatives agrees to surrender the peaceful and full possession of the premises on the termination, expiration or forfeiture of this lease without further notice or demand than expressed in this agreement. The second party (Otho M. Gaffin) agrees to have a survey made of said mine twice each year at his own expense and exhibit said survey to said first party so as to show how the face of the coal is progressing on his land.''

The petition then alleges that the defendant was guilty of a breach of the conditions of the lease in the following respects: First, that he failed and neglected for the first two years of the lease and up to the filing of the petition, to mine and remove sufficient coal to keep the face of the mine on plaintiff's premises even with the face of the coal of the defendant on the adjoining land mined by him; second, that he neglected and refused in good faith and expedition to remove coal from said premises; third, that he neglected and refused in good faith to mine during the remaining years of said lease and to remove at least 16,000 bushels per month from September 1st of each year to April 1st of the following year and at least one-fourth of that amount during the other months of the year; fourth, that he failed and refused to make settlements on the 20th of each month during said lease of all or of any coal mined to the first of such month, and failed, neglected and refused to make any settlement or payment whatever for any coal mined by him, and failed and neglected to mine the minimum amount of coal required by the terms of this lease for four consecutive months or more; fifth, that he failed and neglected to have a survey made of said mine twice each year at his own expense and exhibit the same to the lessor dur-

ing his lifetime or to the plaintiffs after his death so as to show how the face of the coal is progressing.

The petition then avers that in consequence of such breaches, the plaintiffs, on the 21st of June, 1901, served defendant with a written notice of forfeiture of said lease, but notwithstanding such notice the defendant continued in the possession of the premises and refused to surrender the same to the plaintiffs. The ouster is then laid as of the 21st of June, 1901. The monthly rents and profits are averred to be $100. The petition then avers that on and after June 22, 1901, the defendant committed waste on the premises, by digging, excavating and carrying away coal therefrom to the amount of $500. The prayer of the petition is for possession, $100 monthly rents and profits, and $500 waste.

The answer of the defendant admits the ownership of the property and the execution and terms of the lease pleaded by the plaintiffs and then by way of defense pleads that on the . . . day of September, 1899, the lessor and the defendant entered into a verbal agreement modifying the lease by stipulating that the defendant should make no more surveys until notified by the plaintiff so to do; that thereafter in September, 1900, the lessor notified the defendant to have a survey made of the mine, and that he had employed one J. A. Wilson to survey the mine, and that he had exhibited said survey to the lessor, and that the survey showed that the defendant was not upon the lessor's land and had taken no coal therefrom, and that the lessor accepted the survey and made no objection thereto; that in July, 1901, the defendant had said Wilson survey the mine and that the survey showed that he had been excavating coal on plaintiff's land, and that the survey made by said Wilson in September, 1900, was an imperfect and incorrect survey; that as soon as defendant ascertained this fact he caused said Wilson to determine the area of plaintiff's land mined and excavated by defendant and the number of bushels of coal taken there-

from and what said coal would amount to at one-eighth of a cent per bushel, and on the . . . day of July, 1901, tendered to plaintiff the sum of $184.66, the value of the coal taken from plaintiff's land, and deposited with the clerk of the circuit court, to the credit of the plaintiffs, the sum of $200; that on the 20th of March, 1901, and on each month after said date "he had at his mine the number of bushels of coal mined by him on plaintiff's land and the money therefor, and has, at various times, tendered the same to plaintiff;" " that defendant has made valuable and lasting improvements on the premises, has built and established roadways and passages, laid tracks, and at great expense has opened the face of the coal on plaintiffs' land to an extent of 300 feet; that defendant is ready and willing and has been so at all times to carry out his part of the contract, and to pay any and all royalty that may be due plaintiff, and that he has complied with all the covenants of the lease on his part to be performed, and that for the court to declare a forfeiture of this contract would be unreasonable, inequitable and unjust, and would work great injury to this defendant. Wherefore, defendant asks to go hence with his costs in his behalf expended."

The reply denies that any verbal modification or change was made in the lease, and also that the lessor or the plaintiffs agreed with the defendant that he should make no more surveys until notified; admits that defendant had Wilson make a survey of the land in September, 1900, to determine the area of the plaintiffs' land mined and excavated by defendant but denies that the defendant did the same as soon as he ascertained that said survey was improper and incorrect; denies that the coal mined only amounted to $184.66 on the . . . . . day of July, 1901, and denies that on the 20th of March, 1901, and on each month thereafter, defendant had at his mines the number of bushels mined by him on plaintiffs' land, or that he tendered to plaintiffs the

amount of money due therefor; avers that for the purpose of defrauding the lessor, the defendant studiously, willfully and fraudulently concealed the fact that said Gaffin was mining and taking away the coal described in said petition and lease, and that in said month of September, 1900, defendant Gaffin procured a fraudulent survey to be made of the mines he was working for the purpose of showing that at that time he had not reached the land described in said petition and lease belonging to said Brooks, "which survey was made under direction of said Gaffin alone and in the absence of said Alexander Brooks and without his knowledge as to the fact that it was made under Gaffin's direction, and that said survey was but a part of said Gaffin's scheme and device to conceal from said Brooks and the plaintiffs the fact that said Gaffin was digging the coal from the land described in said petition and lease and deny that said survey was accepted by said Brooks."

The reply further avers that said survey was the only survey that defendant had made until after the institution of this suit.

The case made is this:

The defendant and Brooks owned adjoining premises. The defendant had opened a mine on his premises and had constructed a slope or entry to his mine, and was proceeding southwardly in his mining operations. On the 1st of February, 1899, Brooks executed a mining lease to the defendant, conferring upon him a right to mine coal under Brooks' land, which lay on the west of defendant's land. Under the terms of the lease the defendant agreed, in good faith and with proper expedition, to mine and remove the coal from Brooks' premises so that for the first two years of the lease the defendant should mine and remove sufficient coal from Brooks' premises to keep the face of the mining on Brooks' premises even with the face of the coal on defendant's premises, and to pay for the coal mined at

the rate of one-eighth of a cent per bushel. After the expiration of the first two years the defendant agreed to mine at least 16,000 bushels per month from September 1st of each year to April 1st of the following year, and at least one-fourth of that amount during the other months of the year, and whether said amounts were or were not actually mined, to pay for that amount and to make settlements with the lessor therefor on the 20th of each month; and, for the purpose of ascertaining the exact amount of coal mined, the defendant agreed to correctly weigh the coal so mined on Brooks' premises and to keep full and correct accounts thereof, the same to be open at all times to the inspection of the lessor or his representatives.

The lease further provided that if the defendant failed to mine the minimum amount of coal provided for in the lease for four consecutive months, the lessor should have the right to terminate the lease by giving to the defendant written notice thereof, and thereupon the defendant should have the right to remove from the mines all tracks, fixtures, mining apparatus and tools he had placed in the mines upon first paying to the lessor the amount due him.

The lease further provided that on the non-performance of or non-compliance with any of the terms or conditions of the lease by the lessee the lease should be forfeited at the option of the lessor, who should be entitled to re-enter and take possession of the premises on ten days' written notice to that effect, and the lessee agreed to surrender the possession upon the termination, expiration or forfeiture of the lease without further notice or demand than provided in the lease.

The lease further provided that the lessee should have a survey made of the premises twice each year at his own expense and should exhibit the same to the lessor "so as to show how the face of the coal is progressing on his land."

The defendant entered into possession under said

lease on the 1st of February, 1899. No survey was made until September, 1900, when the defendant caused a deputy county surveyor to make the survey. It is admitted that the survey is erroneous and incorrect. The surveyor testified that he did not correctly ascertain the dividing line between the premises of the lessor and lessee, but that he asked the defendant where the dividing line was and the defendant told him, and he accepted the defendant's statement and ran the line accordingly. The survey thus made showed that the defendant had mined no coal from the lessor's land. The dividing line on that survey instead of being practically a north and south line ran at an angle of nearly forty-five degrees southwestwardly, and the survey showed that there had been no work done by the defendant west of the dividing line. The truth is, however, that if the dividing line had been properly run, substantially north and south, the survey would have shown that the defendant had extended his mining operations for a very considerable distance onto the lessor's land. The exact distance is not disclosed by the record, but it was approximately five or six hundred feet. The defendant neither paid nor accounted to the lessor or his representatives for any coal mined by him on the leased premises between the date of the lease on the 1st of February, 1899, and the 21st of June, 1901. On the last-named date the plaintiffs notified the defendant that they exercised the right conferred by the lease and declared a forfeiture of the lease. Thereupon defendant caused said Wilson to make a second survey of the land, in July, 1901, and this survey showed the true state of the affair, and that when the survey of September, 1900, was made the defendant had extended his mining operations onto the leased premises for a distance westwardly of some five or six hundred feet, and that when the second survey was made in July, 1901, the defendant had extended such mining operations onto the lessor's land for a distance of six hundred and seventy

feet, and according to the calculation made by the surveyor, had mined and removed from the leased premises 184,677 bushels. The mining operations on the lessor's land, however, extended only over the east half of the leased land, and whilst the face of the coal on said east half was kept substantially even with the face of the coal on the defendant's premises, the defendant made no attempt whatever to mine the coal on the west half of the leased premises. After the notice of forfeiture was served on the defendant he tendered to the plaintiff his check for $27 or $47, claiming that was all that was due. This action was commenced on the 10th of July, 1901, and thereafter, on the 16th of July, 1901, the defendant tendered to the plaintiffs a check for $184.66. Both amounts were refused by the plaintiffs.

The testimony for the defendant tends to show that at some time, perhaps in September, 1899, the lessor and lessee agreed that there should be no semiannual survey made by the defendant until he was notified by the lessor so to do, and that he was notified to have a survey made in September, 1900, when the first incorrect survey was made by Wilson. The whole testimony is convincing that prior to that time the lessor believed that the defendant was mining coal on his premises.

The testimony on the part of the plaintiffs tends to show that prior to the survey of September, 1900, when the lessor was insisting that the lessee was on his premises, one of the defendant's workmen told the defendant of the lessor's claim, and also told him that he thought they were about ninety feet over onto the lessor's property, and that the defendant said, "it was not necessary for him to know where he was at."

On the other hand, the testimony of the defendant tends to show that up to the time the notice of forfeiture was given the defendant believed that he had not mined nearer than nine feet to the lessor's premises.

Upon the whole case made, however, there is no room for controversy or cavil that as early as Septem-

ber, 1900, when the first survey was made, the defendant had actually extended his mining operations about five or six hundred feet westwardly onto the lessor's premises, and that at the time the survey of July, 1901, was made, which was after this suit was instituted, the defendant had extended his mining operations westwardly onto the lessor's premises for a distance of six hundred and seventy feet, and had taken out therefrom at least 184,667 bushels of coal. There is no claim on the part of the defendant that he at any time attempted in any way to carry the face of the coal across the whole of the leased premises so as to keep it even with the face of the coal on the defendant's premises. In fact, the defendant never made any attempt whatever to mine any coal upon the west half of the leased premises.

It is conceded by the testimony of both parties that the defendant never kept correct accounts of the coal taken from the leased premises. All the coal that came out of the mine, without regard to whether it was taken from the defendant's premises or from the leased premises, was weighed together and no separate account of the portion that came from the leased premises was attempted to be kept by the defendant. There is, therefore, no exact method of determining how much coal the defendant mined from the leased premises. The only way of approximating the amount is by a survey of the excavation, and this is not certain, for the reason that there is a great conflict in the testimony as to the thickness of the veins of coal, the plaintiffs' testimony tending to show that the coal varied from eighteen to twenty-two inches in thickness, while the testimony for the defendant tended to show that the vein varied from eight to sixteen or eighteen inches. In addition to the conceded fact that the defendant never attempted to excavate on the west half of the leased premises, and never, at any time before the notice of forfeiture, attempted to account to or pay over to the lessor or his

representatives the amount of coal excavated, it is admitted that after the expiration of the second year, to-wit, on February 1, 1901, the defendant never paid or tendered to the lessor or his representatives any sum whatever for the coal excavated between the first of February and the twenty-first of June, 1901, and that for the months of February and March, 1901, by the terms of the lease, the defendant was obligated to mine 16,000 bushels per month, and for the remaining months one-fourth of that amount, and to pay for the same on the 20th of each month following, whether those amounts were actually mined or not.

The court refused all of the instructions asked by the plaintiffs and gave all those asked by the defendant. The first instruction asked by the plaintiffs was a peremptory instruction that the plaintiffs were entitled to a judgment. The second instruction asked by the plaintiffs declared that the lessee was not excused for failure to perform the conditions of the lease because of ignorance on his part as to the progress of the mining, induced by the erroneous survey which the defendant had caused to be made. The third instruction asked declared that the defendant was not excused for failure to keep the face of the coal mined on the leased premises practically even with the face of the coal mined on the defendant's premises because he was misled by the erroneous survey of September, 1900, or because of his ignorance of the fact that he was already on the leased premises. The fourth instruction declared that it was the duty of the defendant, under his lease, to keep the face of the coal across the whole of the leased premises practically even with the face of the coal on the defendant's premises, and that if the defendant failed in this regard he forfeited all his rights under the lease. The fifth instruction asked by the plaintiffs declared that if the defendant in fact removed coal from the east half of the leased premises and none from the west half thereof during the first two years, and believed that he

was only getting coal from his own premises, then no tender of money by the defendant would excuse the defendant for failure to comply with the requirements of the lease in good faith and with proper expedition to mine and remove coal from the leased premises during the first two years of the lease, and to keep the face of the coal even on the leased premises with the face of the coal on the defendant's premises, and that the fact that the defendant did not believe up to May, 1901, that he had entered upon the leased premises for the purpose of mining, would not excuse him from said requirements of the lease.

The first instruction given for the defendant declared that if the lessor during the year 1899 notified the defendant not to make any more surveys until required so to do by the lessor and that in August, 1900, the lessor notified the lessee to have such a survey made and that the lessee procured a survey to be made by Wilson, a deputy county surveyor, and that Wilson made a mistake in the survey and did not show by the survey that the defendant was mining on the lessor's premises, and that the defendant exhibited the survey to the lessor and he accepted it as correct and that both parties relied on the survey believing it to be correct, then there can be no forfeiture of the lease by reason of the fact that the defendant did not have two surveys made each year, or because of the fact that the survey of 1900 was incorrectly made. The second instruction given for the defendant declared that there could be no forfeiture of the lease if the surveyor made a mistake in his survey. The third instruction given for the defendant declared the law to be that there could be no forfeiture of the lease for failure of the defendant to keep full and correct accounts of all coal mined on the lessor's land, if such failure arose from the fact that he did not then know that he was mining on the leased land. The fourth instruction given for the defendant declared the law to be that if the defendant mined four

thousand bushels or more of coal during the months of February, March, April, May and June, 1901, then there could be no forfeiture by reason of the defendant not mining the minimum amount of coal to be mined under the lease for four consecutive months. The fifth instruction given for the defendant declared the law to be that if the lease was modified by parol so as to dispense with surveys until the lessor demanded the same to be made, and that the defendant complied with the lease as modified and had a survey made when notified so to do, then there could be no forfeiture of the lease by reason of surveys not being made.

As before stated, the court entered judgment for the defendant, and the plaintiffs appealed.

I.

This case was tried by both parties in the circuit court upon the theory that the answer converted it into a proceeding in equity, and Dunn v. McCoy, 150 Mo. 561; Cox v. Sloan, 158 Mo. 429, and Leavitt v. Taylor, 163 Mo. 170, are relied on as establishing the correctness of that procedure. The principles announced in the cases cited when applied to the answer filed in this case do not, strictly speaking, convert the case into one in equity. In all of the cases cited the answer was in the nature of a cross-bill and affirmative relief was asked. It is only in such cases that the answer can convert the cause from one at law into one in equity. In other instances where mere equitable defenses are pleaded and no affirmative relief is asked by the defendant, the case is not converted from one at law to a proceeding in equity.

The answer in the case at bar pleads equitable defenses but asks no affirmative relief. The defenses pleaded, if sustained, would defeat the action at law, but there the matter would end, and no affirmative judgment in favor of the defendant could be entered against the plaintiffs under the answer in this case. For

the purposes of this case, however, it is not material whether the action be regarded as one at law or as one converted into a proceeding in equity by the defendant's answer, for the same result must necessarily be reached in either view of the case.

## II.

*Forfeiture.*

The lease provided that the lessee, in good faith and with all proper expedition, should for the first two years of the lease mine and remove sufficient coal to at least keep the face of mining on the leased premises even with the face of the coal on the land of the defendant, and that during the remaining years of the lease the defendant should remove at least 16,000 bushels per month from September 1st of each year to April 1st of the following year, and at least one-fourth of that amount during the other months of the year, and whether these amounts were mined or not the defendant should pay for these amounts at the rate of one-eighth of a cent per bushel, and if the amount mined in any one year exceeded 300,000 bushels, then at the rate of one-tenth of a cent per bushel, and that the defendant should correctly weigh and keep full accounts of all the coal mined from the plaintiff's premises and pay for the same on the 20th of each month, and if he failed to mine the minimum amount of coal provided for for four consecutive months the lessor should have the right to terminate the lease, and upon giving ten days' notice of intention so to do the lessor should be entitled to re-enter and take possession of the premises, and the defendant would surrender the possession without further notice or demand, and further that the defendant should cause two surveys to be made each year so as to show how the face of the coal was progressing on his land.

The lease was executed on the 1st of February, 1899. The notice of forfeiture was served on the de-

fendant on the 21st of June, 1901. Between those dates, a period of sixteen months and twenty-one days, the defendant neither accounted to nor paid plaintiffs a single cent of royalty. After the notice of forfeiture was served the defendant tendered to the plaintiffs his check, the plaintiffs say for $27, the defendant says for $47, as payment in full for all the coal mined by him, which the plaintiffs refused. This suit was commenced on the 10th of July, 1901. Sometime during the month of July, the defendant caused a survey to be made of the leased premises, with the result that it appeared that the defendant had mined 184,667 bushels of coal, calculated, not upon the exact weights of the coal taken out but upon an estimate by the surveyor based upon an assumed thickness of the veins of the coal, and on the 16th of July, 1901, the defendant tendered to the plaintiff his check for $184.66, as payment for all the coal mined up to July 1, 1901, and this being refused, deposited with the clerk of the court to the credit of the plaintiffs, the sum of $200.

This survey showed that the defendant had proceeded with his mining operations for a distance of 670 feet on a straight line, on the east half of the leased premises, and had kept the face of the excavation about even with the face of the coal on the defendant's land, but that the defendant had wholly failed to mine any coal on the west half of the leased premises, and hence had wholly failed to keep the face of the coal on said west half even with the face of the coal on the east half of the leased premises and on the defendant's premises.

The defendant interposes two principal defenses, to-wit: first, that the lease was modified verbally so as to dispense with the semiannual surveys until the lessor should notify the lessee to continue the same, and that upon said notice being given by the lessor in September, 1900, the lessee caused a survey to be made, which is conceded to be an erroneous and improper one,

but that the parties relied upon it, and as it did not show that the lessee had mined any coal from the lessor's land, no settlement or demand was made therefor at that time; second, that after notice of forfeiture was served on the 21st of June, 1901, the lessee caused a correct survey to be made, which showed that the lessee had gone six hundred and seventy feet onto the east half of the leased premises and had taken therefrom 184,677 bushels of coal, and that the lessee then tendered $184.66 to the plaintiffs in payment thereof, and on this showing the defendant contends that the court should not enforce a forfeiture of the lease, and invokes the general rule of law that a court of equity will never lend its aid to the enforcement of a forfeiture.

The lessor died about February, 1901, so that the plaintiffs could offer no countervailing testimony to overcome the loose statements of witnesses attributing to the deceased his consent to a modification of the lease requiring semiannual surveys. Under such circumstances such statements are viewed with extreme caution by the courts, and in the view hereinafter taken this feature of the case becomes unimportant, for the principal object of the requirement for semiannual surveys was to determine whether the defendant had kept the condition of the lease to so mine on the leased premises as to keep the face of the coal practically even with the face of the coal on the defendant's premises. The purpose of this provision of the lease was not, primarily, to determine how much coal the defendant had taken out from the leased premises, for the lease provided a more certain method of determining that question, to-wit, by requiring the defendant to weigh and keep correct accounts of all the coal taken from the leased premises. For the purposes of this case, therefore, it is not necessary to decide whether or not the original lease was modified verbally as claimed by the defendant. The principal defense made is that the defendant did not know until the survey of July, 1901,

that he was mining coal on the leased premises, but that on the contrary, relying upon the erroneous survey of September, 1900, he honestly believed that he had not entered upon the leased premises. And it is claimed that a right of forfeiture can never arise from an honest mistake.

There are two complete answers to this defense, to-wit: first, the claimed mistake in the survey of September, 1900, was not an honest mistake made by the defendant based upon a fair and honest survey by a deputy county surveyor; and, second, the obligation of the lease imposed the duty upon the defendant not only to know certainly whether or not he was on the leased premises, but likewise and equally imposed the duty upon him to be on the leased premises and so conduct his mining operations that the face of the coal for the full width of the leased premises should be kept substantially even with the face of the coal on the defendant's premises. This being true there is no room for the application of the doctrine of mistake to this case. Under the terms of the lease it is no defense for the defendant to say he did not know he was on the leased premises, for the absolute requirement of the lease was that he should at once enter upon the leased premises and should so remove the coal therefrom that the face of the coal on the leased premises should be substantially even with the face of the coal on the defendant's premises. The defendant, therefore, cannot be heard to say that he did not know he was on the leased premises and labored under a mistaken apprehension in this regard from a reliance upon an erroneous survey. He was guilty of a breach of the conditions of the lease in this regard when he failed to enter upon the leased premises and to so mine the same. That he did so fail is clearly shown, not only by the erroneous survey of September, 1900, and by the subsequent survey of July, 1901, but was also easily ascertainable by the defendant without the aid of a survey at all, and the evidence,

even from the defendant's side of the case, is convincing that the defendant had notice of the fact that he was on the leased premises, for he told one of his own workmen, who reported to him that the lessor so claimed, that it was none of the workman's "business where he was at." Moreover, it clearly appears from all the testimony in the case that the error in the survey of September, 1900, was caused and solely induced by the act of the defendant himself in telling the surveyor at what point to start the survey and in what direction to run the dividing line between his and the leased premises and not leaving the surveyor to ascertain the true line, as it was his duty to do. The surveyor was an employee of the defendant, and perhaps is excusable for accepting the data furnished by the defendant, though under the circumstances this may well be questioned, but there is no room to indulge any excuse for the defendant in this regard. That survey, therefore, was not a fair or honest survey and the defendant had no right to rely upon it, and the acceptance, if it was accepted, by the lessor, without knowledge that it was a survey dictated by the defendant and not the result of the impartial act of the surveyor, does not help the defendant in the least.

If it be conceded that the semiannual surveys were dispensed with until September, 1900, as the defendant claims, the fact still remains that the defendant up to the date of the notice of forfeiture had been guilty of a breach of every other condition of the lease. He had not mined the whole of the leased premises as he had agreed to do; he had not, in good faith and with expedition, proceeded to remove coal from the leased premises. During the first two years of the lease he never mined any coal from the west half of the leased premises nor did he do so at any time; he never weighed all the coal mined on the leased premises and kept accounts thereof, but on the contrary threw all the coal taken from the leased premises into a common mass

with the coal taken from his own premises and kept no separate accounts of the two; during the sixteen months preceding the notice of forfeiture he now admits he mined 184,677 bushels of coal from the leased premises, and up to the date of the notice of forfeiture he had never accounted to the lessor or his representatives for a single bushel of coal, nor paid him or them a single cent of royalty; he knew that the lease required of him to mine at least 16,000 bushels a month from September 1st of each year to April 1st of the following year, and one-fourth of that amount during the other months of the year, and to pay for those amounts whether they were mined or not on the 20th of each succeeding month, and therefore he knew that for the months of February and March he was under obligation to pay for 16,000 bushels a month, and for the months of April, May and June he was under obligation to pay for four thousand bushels a month, whether the same was actually mined or not, and he knew that he had never paid or offered to pay or account for a single bushel of coal during that or any other time covered by the lease.

In short, during the sixteen months and twenty-one days, between the execution of the lease and the notice of forfeiture, the defendant had never complied in good faith with any of the provisions of the lease. After the lessor had exercised the power conferred by the lease and declared a forfeiture of the lease, he tendered the lessor's representatives the munificent sum of $27 or $47 as payment in full for all coal mined, and after suit was brought he tendered $184.66, and now claims to come into court with clean hands and asks the court to relieve him of a forfeiture caused solely and entirely by his own acts, defaults and omissions. This is as strong a case as could be stated in favor of the right of enforcing a forfeiture, and if a forfeiture cannot be enforced in this case it must be because there is no such thing as a forfeiture known to the law, and hence all

of the provisions of a lease providing for forfeiture and re-entry are mere legal nullities.

Time and space forbid an extended examination of the multitude of cases bearing upon the question of forfeiture and re-entry. The learning of ages has been expended in the attempt to formulate a rule upon this question which will fit all cases. The tendency of courts has ever been to regard provisions of this character as mere covenants, for the violation of which the injured party is entitled to damages, and not as conditions subsequent, for the breach of which the injured party is entitled to declare a forfeiture and to re-enter and recover possession of the premises. A careful analysis of most of the cases relied upon by the defendant will show that they proceed mainly upon the proposition that the stipulation of the lease in question did not carry with it a right of re-entry, or else that the provision of the lease did not go to the essence of the contract but involved a mere incident thereto, and the violation or breach of the provision could be fully compensated in damages. Whatever may be the rule in other States, and whatever expressions may be found in the earlier cases, which seem to bear out the idea that ejectment will not lie for the breach of a condition subsequent, the later decisions in this State fully sustain the doctrine that where the deed contains a provision for forfeiture for a breach of an essential condition of the deed, ejectment will lie for the possession of the premises. The earlier cases were made to depend largely upon the question whether or not the right of re-entry was expressly reserved, but the later cases in this State hold to the rule that a right of re-entry need not be expressly reserved, but such a right is a necessary incident to the condition, and if the condition is broken the right of possession immediately arises. [Ruddick v. Railroad, 116 Mo. l. c. 31 and 34; Kirk v. Mattier, 140 Mo. l. c. 34.]

The first case cited was an action at law for dam-

ages for the breach of a condition. The plaintiff recovered judgment in the circuit court, which was reversed, without remanding, by this court, largely, if not principally, upon the ground that the action was not properly brought; that if the condition subsequent was violated the plaintiff's remedy was in ejectment and not an action for damages. The Kirk case in all its essential features is very like the case at bar. It was an action in ejectment to recover land that had been leased for mining purposes, under a forfeiture of the lease, because of the failure of the lessee to comply with the conditions of the lease relative to the manner of mining and to the time within which the work should be done. The lower court entered judgment for the defendant. This court reversed that judgment and remanded the cause with directions to enter judgment for the plaintiff. The lease, *inter alia*, required the lessee to begin mining in good faith within ten days from its date and to sink a shaft to the depth of two hundred feet within twelve months thereafter, and further required the lessee to pay for all ores mined on or before the 5th day of each month, and contained the following provision: "And any failure to comply with or perform the requirements and conditions of this lease, in good faith, shall end and determine the same, and the party of the first part may enter upon and hold said demised premises." It appeared that the defendant had not complied with the lease, in that, he had not sunk a shaft over ninety feet in depth during the first year, and had not mined the land continuously as agreed. The plaintiff asked the court to instruct the jury that if the defendant had failed to sink a shaft two hundred feet in depth within one year from the date of the lease, and otherwise failed to comply with the terms of the lease by failing to carry on the mining operation as in said lease provided, then the plaintiff was entitled to the possession of the premises. The court refused the instruction. The defendant claimed that

the agreement was a mere license and not a lease, but this court held that it was a lease and then said: "Having come to the conclusion that the instrument was and is a lease and that defendant was in possession of the mine when the action of ejectment was commenced, the next inquiry is, Did the court err in refusing the plaintiff's instructions? As already indicated, there was ample evidence that defendant and his co-defendants, who were his employees, were in possession of the mine and premises sued for, that defendant had utterly failed to sink the shaft two hundred feet during the first year as required by the lease, and had not continuously worked said mine. The plaintiff prayed the court to instruct that if the court should find these facts he was entitled to recover. By the terms of the lease it is provided 'that any failure to comply with or perform the requirements of this lease in good faith shall end and terminate the same and the party of the first part may enter upon and hold said premises;' in other words, all rights under the lease shall be forfeited. Under the circumstances no doubt can exist as to plaintiff's right to maintain ejectment. No demand was necessary. It was the duty of the lessee to observe his covenants. The lessor could either re-enter or bring his ejectment, which is a sufficient declaration of a forfeiture. [Avery v. Railroad, 113 Mo. 561; Ellis v. Kyger, 90 Mo. 606; O'Brien v. Wagner, 94 Mo. 93.] The learned circuit court erred in refusing the plaintiff's instruction, and as all the facts were admitted no good purpose can be subserved by putting the parties to the expense of another trial save as to the inquiry for the damages."

The case at bar is certainly as strong in favor of the plaintiff as the Kirk case. In the Kirk case the obligation of the lease was to sink a shaft two hundred feet during the first year of the lease; the lessee actually sunk a shaft ninety feet. In the case at bar the obligation of the lease was that the lessee should mine the leased premises so that for the first two years the face

of the coal on the leased premises should be kept substantially even with the face of the coal on the defendant's premises. The defendant mined six hundred and seventy feet in a straight line on the east half of the leased premises, but did no work whatever on the west half of the leased premises. The lease in the case at bar provided for a forfeiture and re-entry. The lease in the Kirk case contained no provision for re-entry. The decision in the Kirk case can lead to but one conclusion in this case. Parties have a legal right to make their own contracts, and, so long as they violate no inflexible rule of law, courts must give effect to them, and cannot relieve either party from the effects and consequences of his own contract. It is not difficult to understand the provision of this lease which required the defendant to keep the face of the coal on the whole of the leased premises substantially even with the face of the coal on defendant's premises. It is easily perceivable why it would be extremely injurious to the defendant's land to permit a lessee to mine it otherwise than is provided by the terms of this lease. It would practically destroy the mine to permit a lessee to excavate the coal in pockets and thereby make the future operation of the mine more difficult and expensive. By requiring the mine to be uniformly operated, many manifest advantages ensue to the mine and owner thereof. There is, therefore, nothing unreasonable, or in contravention of law in the lease involved in this case. The defendant did not comply with the terms of the lease, and his defense that he did not know that he was on the defendant's land is in itself a confession that he had not complied with the conditions of the lease, for those conditions required him not only to be on the land, but to mine it so that the face of the coal on the leased land should be substantially even with the face of the coal of the defendant's land, and the defendant knew all the time that he was not so conducting his mining operation, and therefore was aware from the

beginning that he was violating the conditions of the lease. Under these circumstances the defendant has no standing in a court of equity and no right to ask any court to relieve him of his own breach of his voluntary contract.

For these reasons the judgment of the circuit court is reversed and the cause remanded with directions to enter judgment for the plaintiffs for the possession of the premises sued for, and furthermore to ascertain the damages for the detention of the premises, and to enter judgment in favor of the plaintiff therefor.

All concur.