JOSEPH T. SMITH et al., Appellants, v. THE EAGLE COAL & MERCANTILE COMPANY et al., Respondents.

Kansas City Court of Appeals, April 7, 1913.

1. QUIET TITLE: Leases: Forfeiture: Mines and Mining. The plaintiff sued to recover possession of certain coal lands, which their ancestor had leased to the defendants. The lease contained a clause that it shall be forfeited, if the mine remained idle more than sixty consecutive days, unless the defendants shall be prevented from operating the mine by reason of strikes of employees.' The defendants released the mine to another company, but the latter became insolvent, and the defendant resumed possession. The miners refused to work until they received the wages due them from the insolvent company, which the defendants refused to pay. Thereupon a strike was declared and no coal was removed from the mine for about four months. The plaintiffs then served notice of forfeiture of the lease on defendants. *Held*, that no ground of forfeiture existed at the time the plaintiff gave notice of their election, or when this action was begun.

2. **Leases: Forfeiture: Right of Re-entry.** Where a right of forfeiture is expressly reserved and is reasonable, it will be enforced whether founded on the breach of a condition precedent or subsequent. And where a right of forfeiture is expressly reserved in a deed but a right of re-entry is not expressly reserved, the latter right, being a necessary incident to the former, will be implied; and, if the condition is broken, the right of possession immediately arises.

3. **DEFINITIONS: Strikes.** The term "strike" as applied to the combined action of a body of workmen has been defined: "As the act of quitting work, specially such an act by a body of workmen, done as a means of enforcing compliance with demands made on their employer. It is applied commonly to a combined effort on the part of a body of workmen employed by the same master to enforce a demand for higher wages, shorter hours, or some other concession, by stopping work in a body at a prearranged time, and refusing to resume work until the demanded concession shall have been made."

Appeal from Randolph Circuit Court.—*Hon. Alex. H. Waller,* Judge.

AFFIRMED.

*Courtright & Snider, M. J. Lilly* and *W. P. Cave* for appellants.

Where the rent reserved is a certain fixed proportion of the price of the products which the lessee may get and sell, or a royalty on the mineral mined, the law implied the intent on the part of the grantee to work the mine in a proper manner and with reasonable diligence, so that the grantor may receive the compensation or income contemplated when the agreement was made. Cyc., vol. 27, p. 705 and cases there cited. Brook v. Gaffin, 192 Mo. 228; Brook et al. v. Gaffin, 196 Mo. 351. Plaintiffs' petition states a cause of action under Sec. 650, R. S. 1899 (Secs. 2535, R. S. 1909). The petition was clearly supported by the testimony adduced, and plaintiffs are entitled to the relief prayed for in their petition, asking for the forfeiture of the lease in question. Huff v. Land Co., 157 Mo. 65; Ball v. Woolfolk, 175 Mo. 278. Under the

evidence, both grounds of forfeiture were proven and plaintiffs are entitled to the relief prayed for by them.

*J. E. Jones* and *Frank Lofty* for respondents.

There was no breach of the covenant to pay the royalty. The allegations of the petition are that there was no mining of coal from August 25, 1909, to December 30, 1909, and the evidence is undisputed that there was no coal produced until December 1, 1909. Hence there was no royalty in default on December 14, 1909, on which a forfeiture could be claimed. It is not the failure to pay any royalty, but the failure to pay the royalty of three cents per ton for all coal mined and removed from the mine within one month after the same becomes due that works the forfeiture. Where in a lease causes of forfeiture are specified, it is not to be inferred that there are any grounds for forfeiture not declared to be such. McKnight et al. v. Kreutz, 51 Pa. St. 232; West Ridge Coal Co. v. Von Storch, 5 Lack. Leg. N. Pa. 189. A forfeiture under a clause requiring the mining to be conducted in a fair and equitable manner cannot arise from a failure to so develop the mines so as to produce the minimum, the non-payment of the minimum being otherwise provided for. West Ridge Coal Co. v. Von Storch, supra. One for whom a condition of forfeiture is made may waive such forfeiture. Clark et al. v. Midland Blast Furnace, 149 Mo. App. 58, 65, 66, 68; Murtland et al. v. English, 6 Am. & Eng. Annotated Cases, 339. Slight acts on the part of the landlord may amount to a waiver. 40 Mo. 449; 24 Cyc. 1360. The requirements of a lease must be strictly followed by the lessor before a forfeiture will be enforced against the lessee. 24 Cyc. 1357; Johnson v. Lehigh Valley Traction Co., 130 Fed. 932. Parties have a right to make their own contracts, and so long as they violate no inflexible rule of law, courts must give effect to them and can-

not relieve either party from the effects and consequences of their own acts. Brooks v. Gaffin, 192 Mo. 254. A failure to exercise a right within the time limited by the terms of a contract entails a loss of such right. 24 Cyc. 1025; topic, Express Limitations as to Time.

JOHNSON, J.—Defendant, the Eagle Coal & Mercantile Company, is in possession of certain land and claims the right to continue in the possession and enjoyment thereof under the terms of a lease executed by the ancestor of plaintiffs from whom they derived title.

Plaintiffs concede the execution of the lease and that when the title to the land passed to them they recognized the "Eagle" company as their lessee but contend that on account of the breach by defendant of certain conditions subsequent, the performance of which is imposed by the lease upon the lessee, they declared a forfeiture and became entitled to the possession of the land. The object of this suit is to have the lease adjudged forfeited.

Defendants, who are the Eagle Company and two sub-lessees, deny that a forfeiture was declared by plaintiffs or that any ground of forfeiture or right of entry existed in favor of plaintiffs at the time of the institution of this suit. At the close of all the evidence introduced by the parties the court declared the law to be "that under the pleadings and the evidence plaintiffs are not entitled to recover, and its verdict, sitting as a jury, should be for the defendants." Judgment was rendered accordingly and plaintiffs appealed.

J. T. Smith of Fremont, Nebraska, was the owner of the lands in controversy and on November 1, 1901, he executed a written lease by the terms of which he leased to the grantees for a term of twenty years "all the coal" under the surface of the land and "all surface ground necessary for opening slopes and running

tramway to the same or for sinking shaft; also all further surfaces necessary for switches, tippleheads, blacksmith shop, stable, houses for engineer and other necessary appurtenances for the development of the mine not to exceed ten acres, exclusive of switch privileges, also a right to prospect for coal."

It was stipulated that the lessees "shall have until the first day of August, 1902, in which to begin the taking out of coal by the carload and from and after that time the said second party (lessees) shall begin the gradual expansion and development of the mine," that the consideration to be paid by the lessees for the grant should be a royalty of three cents per ton for all coal removed from the land by them, that "said royalty is to be paid to said first party . . . on the 15th day of each month for all coal mined and removed from the mines the preceding calendar month and that "on a failure to pay the same for one month after the same becomes due and payable this lease shall be forfeited at the option of the said first party." Further it was agreed "this lease shall also be forfeited if this mine remains idle for more than sixty consecutive days—unless said second parties shall be prevented from operating the same by reason of strikes of employees, or a failure of cars or train service by the Railroad Company, or by legal proceedings from a court of competent jurisdiction.

"If at any time said first party claims a forfeiture of this lease he shall so notify said second parties in writing within thirty days after the cause of forfeiture occurs, and a failure to so notify will be deemed a waiver of the right to claim it for all occurred causes. On the forfeiture or termination of this lease, said second parties or their assigns shall have the right to remove all personal property from within or around the mines and all fixtures necessary to the same and all houses and shops that may be on said land; having

first paid all royalties due to said first party or his assigns.''

The lessees sold and transferred their interest in the lease to the defendant, the Eagle Company. Smith, the lessor, died shortly after the execution of the lease and plaintiffs, as his heirs, became his successors. The Eagle Company opened a coal mine on the premises, operated it on a large scale, paid the royalties to plaintiffs and continued in the operation of the mine and in full performance of the terms of the lease until 1909, when it sold and transferred its interest in the lease to the Moberly Coal Company under a contract that provided for a forfeiture in case the vendee failed to pay the purchase price as agreed or failed to perform the conditions of the lease. The Moberly Company was put in possession of the mine and operated it until August 25, 1909, when being insolvent and unable to continue the business it quit work, laid off the miners and other employees without paying their accrued wages and thereby forfeited its rights under its contract with the Eagle Company.

Several days later an officer of the Eagle Company took possession of the mine and premises and, thereafter, during a period of more than four months, no coal was taken out of the mine and sold and, therefore, no royalty was paid to plaintiff. The Eagle Company kept a small force employed for the purpose of operating the fan and pump and doing other things required to keep the mine from becoming a wreck and expended about $500 for such work but no coal was taken out except enough to keep fires under the boilers, no betterments or improvements were made nor was any work preparatory to the mining and removal of coal performed. In short, defendant's activities were restricted merely to preservative measures and did not include any productive efforts. The cause of this condition appears to have been the action of the labor union to which the miners belonged who had been em-

ployed by the Moberly Coal Company and whose wages were not paid. Shortly after that company became defunct the local union met and resolved, in effect, to boycott the mine until the miners were paid. The union did not desire the destruction of the mine and allowed the Eagle Company to employ sufficient labor to keep it in a state of reasonable preservation but would not allow its members to do any other work and the Eagle Company found itself unable to employ miners to do any work even preparatory to mining coal. By such drastic methods the union sought to compel the Eagle Company to pay debts incurred by another corporation for which it was not legally responsible. Such was the condition of affairs at the mine on December 14, 1909, when plaintiffs served a written notice on the Eagle Company declaring the lease forfeited "on the ground and for the reason that said parties of the second part and their assigns have failed and neglected to operate the coal mines on said land and have permitted the coal mines opened and operated on said land under said lease to remain idle for more than sixty consecutive days; and on the ground and for the further reason that said parties . . . have failed, neglected and omitted to pay to said party of the first part . . . the royalty called for in said lease accruing since the calendar month of August, 1909."

On defendants' refusal to acknowledge plaintiffs' right to declare a forfeiture on the grounds stated and to surrender possession of the premises, this suit to. quiet title was begun.

Certain questions relating to the giving of the notice of forfeiture and the sufficiency of the notice are argued in the briefs, but in the view we have of the case it will not be necessary to discuss such questions. We shall assume that if a ground of forfeiture existed in favor of plaintiffs, due and sufficient notice

of plaintiffs' election to avail themselves of such ground was given and served on defendants before the commencement of this action. The issues we shall discuss are those relating to the asserted right of plaintiffs to declare a forfeiture and to re-enter the land. The parties to the lease expressly stipulated that a failure to pay royalties in the time stated or a nonenforced idleness of the mine for sixty consecutive days should constitute a ground on which the lessor might declare a forfeiture and assert his right of re-entry. That was a lawful stipulation—one the parties could and did make a condition of the letting—and therefore is one that the court will enforce. Though forfeitures are not favorites of the law, neither are they necessarily outlaws and though it may be true that a right of forfeiture cannot rest on an implied agreement or condition but must be distinctly reserved, it is also true that where, as here, the right is expressly reserved and is reasonable it will be enforced whether founded on the breach of a condition precedent or subsequent. And where a right of forfeiture is expressly reserved in a deed but a right of re-entry is not expressly reserved, the latter right being a necessary incident to the former will be implied "and if the condition is broken the right of possession immediately arises." Brooks v. Gaffin, 192 Mo. 228 and 196 Mo. 351.

The principal question for determination is whether or not a ground of forfeiture existed in favor of plaintiffs on December 14, 1909, the date notice of plaintiffs' election was given.

The claim that defendant had defaulted in the payment of royalties is not supported by evidence. No royalties were paid for the period between August 25th and December 14th for the reason that no coal was mined. We pass that ground without further comment and come to the issue of whether defendant allowed the mine "to remain idle for more than sixty

consecutive days" within the prohibitive meaning of the stipulation providing for a forfeiture on that score. This term should be construed in the light of its context and with reference to the subject-matter and expressed objects of the contract. The only rent the lessor was to receive from the leased property was a royalty the amount of which would depend, in a great measure, on the activity, skill and executive ability of the lessee. The prime object of both parties was to mine coal and sell it, since such would be the only result of the operations of the lessee that could be productive of profit to either party. It is fair to say that the contract imposed on the lessee the obligation to work the mine with reasonable diligence and in a reasonably proper manner (27 Cyc. 705) and denounced as unreasonable and therefore violative of a material condition any cessation of productive activity for a period of sixty consecutive days.

The lessee was not required to mine, remove and sell coal during every period of sixty days. The contract contemplated and provided for the development and expansion of mines on the premises and time consumed in the installation of betterments and improvements of the means by which the production of marketable coal might be increased could not be considered as time spent in idleness. On the other hand time consumed in doing nothing towards mining or preparing to mine coal was intended by the parties to be treated as lost time. Work done in the mere preservation of the property in a broad sense was operative work but was not the kind of activity which would be the antonym of the idleness referred to in the stipulation under discussion. If defendants' construction of the terms were correct the lessee, by merely keeping the fans and pumps going and clearing the passageways occasionally could remain in the possession of the mine to the end of the term, more than eight years, without mining a ton of coal or paying

the lessors a penny—a result not contemplated by the parties and clearly at variance with all the expressed terms and conditions of the contract.

We hold that the mine remained idle for more than sixty consecutive days and that plaintiffs would have been justified in declaring a forfeiture but for the existence of a cause for the apparent inactivity of the lessee that fell within the class of causes the parties stipulated should be regarded as a sufficient excuse for such idleness. The language of the contract is that a ground of forfeiture shall occur "if this mine remains idle for more than sixty consecutive days—unless said second parties shall be prevented from operating the same by reason of strikes of employees," etc.

The term "strike" as applied to the combined action of a body of workmen has been defined: "As the act of quitting work; specifically, such an act by a body of workmen, done as a means of enforcing compliance with demands made on their employer. It is applied commonly to a combined effort on the part of a body of workmen employed by the same master to enforce a demand for higher wages, shorter hours, or some other concession, by stopping work in a body at a prearranged time, and refusing to resume work until the demanded concession shall have been made," etc. 7 Words & Phrases, p. 6698.

Strikes have been spoken of as insurrections of labor. They have proved an effective weapon in the hand of organized labor and stipulations of the nature of that before us generally are found in contracts the performance of which depends, in part, upon the co-operation of wage-earners. Considering the aims and purposes of the parties to the contract the subject-matter and the phraseology of the whole instrument, we are convinced the parties, regardless of the literal or most technical definition of the word "strike" intended to use the word in its broader meaning of an

insurrection of labor and to excuse the lessee from the obligation of operating the mine as long as he should be prevented from so doing by such insurrection. The cessation of labor at the mine was not caused by a strike of the miners but by the default of the insolvent operators, but the action of the labor union in ordering the miners not to resume work until defendant, the Eagle Company, had paid their wages which they had not earned in its service, had no legal justification and was the equivalent of ordering a strike against the mine—against defendants. At any rate it was a combination of miners that had for its object the coercion of defendant into compliance with an unjust demand on pain of being prevented from resuming the operation of the mine. It was just such an event as the parties obviously intended should operate as an excusatory cause for idleness and we think it is immaterial whether the genesis of the controversy was a technical strike or a "shut down."

These considerations result in the conclusion that no ground of forfeiture existed at the time plaintiffs gave notice of their election or when this action was begun.

The judgment was for the right party and is affirmed. All concur.